(121 App. Div. 889)

### ARNOLD v. NATIONAL STARCH CO.

(Supreme Court, Appellate Division, Fourth Department. July 9, 1907.)

MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE.

In an action for injuries to an employé received in a fire in the employer's factory, evidence examined, and *held* insufficient to show negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 954–977.]

Kruse and Spring, JJ., dissenting.

Appeal from Trial Term, Oswego County.

Action by Anna Arnold, an infant, by Stephen Giersch, her guardian ad litem, against the National Starch Company. From a judgment for plaintiff, and from an order denying a motion for a new trial on the minutes, defendant appeals. Judgment and order reversed, and new trial ordered.

The action is brought to recover damages for personal injuries sustained by the plaintiff while in the defendant's employ. A fire occurred in the defendant's factory, burning the plaintiff's face, and other

parts of her body, which the plaintiff claims occurred through the negligence of the defendant.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Elisha B. Powell, for appellant.

Udelle Bartlett, for respondent.

PER CURIAM. Judgment and order reversed, and new trial ordered, with costs to the appellant to abide event. Held, that there is no evidence tending to show that the injuries of which the plaintiff complains were caused by any negligence on the part of the defendant.

KRUSE, J. (dissenting). The general ground upon which the plaintiff's cause of action is founded is that the defendant, for whom the plaintiff was working, failed to furnish her a reasonably safe place in which to do her work. The two things which were pointed out by the trial judge in his charge to the jury, aside from the general ground just named, upon which they were permitted to base a finding of actionable negligence against the defendant, were: (1) Permitting inflammable dust to accumulate in such quantities and under such circumstances that it would readily take fire and burn the defendant's workers, as was done upon this occasion; (2) failure to supply its factory with proper means of egress in case of fire, and other emergencies, particularly in omitting to have fire escapes upon the outside of the factory.

The defendant's factory is located at Oswego, N. Y. It is three stories high, besides the basement. The defendant is engaged in manufacturing starch. The plaintiff made paper boxes, and worked on the upper floor of the factory. At that time there were about 20 girls working on this floor. The floors were connected by stairways boxed in. There were no fire escapes on the outside of the building. The plaintiff, at the time she was burned (January 13, 1905), was 14 years and 6 months old. The factory was shut down from noon to 1 o'clock. Within a few minutes after starting the machinery in the afternoon of the day of the accident, there were two explosions, one following the other in quick succession, and immediately thereafter fire was discovered. The extent of the fire was in dispute; one of the witnesses for the plaintiff testifying that the fire seemed to be all over at once, in the air, and all over. The plaintiff was working at a machine near the northeast corner of the room. In her description of what took place, she testified that there was a little noise; her machine gave a sort of jump, the belts flew off, and then a loud noise, and the fire came down on her; that she ran, but could not get out. She further stated that the whole room was full of smoke and flying dust, and like sheets of fire all over the room and through the air, although she disclaimed that the dust in the air was afire. She describes various attempts made by her to escape, going to the different windows, and to the door of the stairway, which she was unable to open, and finally the plaintiff and other girls ran into a little room near the head of the stairs, at the northwest corner. The foreman testified that he saw the

little Arnold girl, the plaintiff, on fire, on the side of the head, and shoulder, and hip, and around her apron; that he went to the hallway to see if the stairway was clear, and it was all smoke and fire, and he was afraid to let the girls go down; that they were excited; and that he sat in the window to keep them back, evidently fearing that they would jump out. The plaintiff and others with her finally effected their escape from the building. A man came up to the room, and told them that they could go downstairs. They followed him downstairs, and at the foot of the stairs, the plaintiff states, there was thick, black smoke. The door on the floor below was wedged towards the casing, in the direction opposite from which it opened. The girls, the plaintiff among them, were lifted into a bin, and from there eventually got out of the building.

It is contended on behalf of the plaintiff, and the proof tends to show, that starch dust is inflammable, and that it was permitted to accumulate on the sides and other places in the building, where it found lodgment, thus endangering the safety of the workers in the building; and it is urged that the defendant was neglectful in its duty to the plaintiff in permitting this dangerous condition to exist. The defendant strenuously denies that it permitted the dust to accumulate, contending that the floors were swept daily, sometimes oftener, and that the dust was removed. It points to the fact that, although the factory had been in operation for many years, no accident such as this had ever before happened; and that for a long time the building was lighted by exposed gas jets without taking fire, while at the time of the accident it was lighted by incandescent electric lights. It does not necessarily follow that because the particles of starch dust floating in the air were not thus ignited, and that no similar accident had happened before this one, that the defendant was not negligent in failing to discover the danger of permitting the starch dust to accumulate as the plaintiff claims it did, or, if such danger was known to it, in not preventing the accumulation so as to remove the danger.

If the evidence upon behalf of the plaintiff is to be relied upon, this starch dust was not only highly inflammable, but was permitted to accumulate so generally and in such quantities as to endanger the factory employés. The foreman of the upper floor himself testified that, while he was such foreman, being about two years, he had never known the walls of his floor to be cleaned; that the dust was thick on the walls, racks, and machinery, in some places probably a sixteenth of an inch and more. The plaintiff's claim in this regard seems to be corroborated by the almost instantaneous and general conflagration which occurred at the time of the accident. Upon the whole evidence, it was a question of fact whether the defendant, in the exercise of reasonable prudence and vigilance, could not have foreseen and anticipated that such an accumulation of this inflammable substance would be liable to take fire through unavoidable accident or otherwise, and endanger the safety of its factory workers. The verdict of the jury established that proposition against the defendant.

It is further contended on behalf of the defendant that the trial court erred in holding that it was the absolute duty of the defendant to have fire escapes on the outside of this building, and it is urged that, in any

event, the lack of fire escapes did not in any way contribute to or enhance the plaintiff's injuries.

In 1887, the Legislature passed an act (chapter 462, p. 575, of the Laws of 1887) requiring fire escapes to be provided on the outside of all factories, three or more stories in height, connecting with each floor above the first, well fastened and secured, and of sufficient strength, and also requiring stationary stairs or ladders on the inside, from the upper story to the roof as a means of escape in case of fire. This provision was added as an amendment to the Factory Act, Laws 1886, p. 629, c. 409. It was amended from time to time, and was incorporated in a modified form in the labor law in 1897. Sections 82, 83, c. 415, p. 481, Laws 1897. Section 82 of that act, and which embodies the provision, reads as follows:

"Such fire escapes as may be deemed necessary by the factory inspector shall be provided on the outside of every factory in this state consisting of three or more stories in height. Each escape shall connect with each floor above the first, and shall be of sufficient strength, well fastened and secured, and shall have landings or balconies not less than six feet in length and three feet in width, guarded by iron railings not less than three feet in height, embracing at least two windows at each story and connected with the interior by easily accessible and unobstructed openings. The balconies or landings shall be connected by iron stairs, not less than eighteen inches wide, with steps of not less than six inches tread, placed at a proper slant and protected by a well-secured hand-rail on both sides, and shall have a drop ladder not less than twelve inches wide reaching from the lower platform to the ground.

"The windows or doors to the landing or balcony of each fire escape shall be of sufficient size and located as far as possible, consistent with accessibility from the stairways and elevator hatchways or openings, and a ladder from such fire escape shall extend to the roof. Stationary stairs or ladders shall be provided on the inside of every factory from the upper story to the roof, as a means of escape in case of fire."

The next succeeding section provides that:

"Any other plan or style of fire escape shall be sufficient if approved in writing by the factory inspector. If there is no fire escape, or the fire escape in use is not approved by the factory inspector, he may, by a written order served upon the owner, proprietor or lessee of any factory, or the agent or superintendent thereof, or either of them, require one or more fire escapes to be provided therefor, at such locations and of such plan and style as shall be specified in such order. * * * "

It appears that an inspector visited this plant about twice a year. He had made an inspection about four months before the accident. It is not clear from the evidence just what official duties devolved upon the inspector. He seems to have been connected with the department of labor, and the report which he made was filed in the office of the department of labor. It states, among other things, that there is a full compliance with the law relative to safety of buildings and fire escapes. The certificate of the first deputy commissioner of labor, attached to the copy of the report which was received in evidence, states that it is a copy of a report of inspection of the defendant's factory, made by William E. Petit, special agent, on the 16th day of September, 1904, and filed in that office. One of the defendant's foremen, who went with the inspector around the plant, testified that on the occasion of the inspection in September, 1904, the inspector did not find fault with anything; neither with the factory, nor any of its conditions.

It is contended that outside fire escapes need not be provided unless required by the factory inspector, and this factory having been provided with inside stationary stairs, from the fourth floor, where the plaintiff was at work, to the ground, and also stationary stairs leading from the fourth floor to the roof, and the inspector having made no objection to the condition of the building, and having reported in writing that there had been a full compliance with the law relative to safety of buildings and fire escapes, that it substantially constituted an approval in writing by the factory inspector of the plan or style of fire escape under the law. My attention has not been called to any reported case, and I have been unable to find any, where the precise question under this statute has been decided; but it has been held, under similar statutes, providing for fire escapes for buildings, and the like safeguards, the construction, placing, and other details of which have been made subject to the approval and direction of public officers, that it is the duty of the person upon whom the obligation is placed, to furnish such fire escapes or safety appliances and procure such approval. Willy v. Mulledy, 78 N. Y. 310, 34 Am. Rep. 536; McLaughlin v. Armfield, 58 Hun, 376, 12 N. Y. Supp. 164; McRickard v. Flint et al., 114 N. Y. 222, 21 N. E. 153. I think the owner of a factory may not shield himself from liability for the omission to furnish outside fire escapes, as required by this statute, because the public officer whose duty it is to see that it is done does not compel the owner to act. Even if the factory inspector himself could have approved the inside stairs as substitutes for the outside fire escapes, which I seriously question, I think that what was done by the special agent was not such an approval as the statute contemplates. The approval is required to be by the factory inspector and in writing.

Neither do I think it can be said as a matter of law that the plaintiff assumed the risk, or that the finding of the jury is contrary to the evidence in that regard. It is entirely probable that she gave no attention to the lack of fire escapes. She was only 14 years and 6 months old. While she knew of the dust, and perhaps to some extent the inflammable nature of it, it was still a question of fact whether she appreciated the danger of her situation. Whatever may have been the rule under the common law, the Employer's Liability Act, Laws 1902, p. 1750, c. 600, § 3, now declares that the presumption that arises by an employé, entering upon or continuing in the service of his employer, includes those risks, and those only, inherent in the nature of the business, which remain after the employer has exercised due care in providing for the safety of his employé, and has complied with the laws affecting or regulating such business or occupation, for the greater safety of such employés.

The judgment and order should be affirmed, with costs.

SPRING, J., concurs with KRUSE, J.